# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| JERRY D. ROSSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:10-00060 |
| v. ) | Judge Nixon / Knowles |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14, p. 1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 20, p. 1.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on April 6, 2007,[1]

---

[1] The ALJ, in her decision, states that Plaintiff filed his application on April 4, 2007. TR 25. Plaintiff's application is dated April 6, 2007. TR 113. This date discrepancy is not, however, material to the issues before the Court.

1

alleging that he had been disabled since March 19, 2007, due to seizures, a spastic colon, a nervous condition, and memory problems. *See, e.g.,* Docket No. 13, Attachment ("TR"), pp. 79, 113. Plaintiff's application was denied both initially (TR 76-77) and upon reconsideration (TR 80-81). Plaintiff subsequently requested (TR 90) and received (TR 34) a hearing. Plaintiff's hearing was conducted on February 25, 2009, by Administrative Law Judge ("ALJ") Barbara Kimmelman. TR 34-60. Plaintiff and Vocational Expert, Michelle McBroom-Weiss, appeared and testified. *Id.*

On September 17, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 33. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The claimant has not engaged in substantial activity since March 19, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*)
>
> 3. The claimant has the following severe impairments: irritable bowel syndrome; cognitive disorder; cannabis abuse, and history of alcohol dependence (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can perform simple 1-2 step repetitive tasks that did not require good reading, writing, or math skills and he may need to take an unscheduled bathroom break up

>            to once a week.
>
> 6.         The claimant is capable of performing past relevant work
>            as a factory laborer and bundler. This work does not
>            require the performance of work-related activities
>            precluded by the claimant's residual functional capacity
>            (20 CFR 404.1565).
>
> 7.         The claimant has not been under a disability, as defined in
>            the Social Security Act, from March 19, 2007 through the
>            date of this decision (20 CFR 404.1520(f)).

TR 27-32.

On November 9, 2009, Plaintiff's counsel wrote a letter to the Appeals Council requesting review of the hearing decision. TR 7-10. On April 30, 2010, the Appeals Council issued a letter declining to review the case (TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the

3

process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any

4

medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform,

---

[2]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

5

given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) failing to order a neurological examination with memory testing so that she could develop a full and fair record; (2) not giving adequate weight to the medical records from Plaintiff's treating physician regarding his epilepsy; (3) determining that Plaintiff's irritable bowel syndrome was not a serious impairment using

6

incomplete evidence; (4) inappropriately rejecting the credibility of Plaintiff; and (5) determining that because Plaintiff had held a job for 23 years he was still employable. Docket No. 15, p. 4-11. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.* at 12.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Ordering a Neurological Examination with Memory Testing in Order to Fully and Fairly Develop the Record

Plaintiff argues that the ALJ did not order a needed neurological examination with memory testing, and therefore, failed to fully and fairly develop the record. Docket No. 15, p. 4-6. Specifically, Plaintiff argues that his previous counsel had requested that Plaintiff undergo a neurological examination and memory testing prior to the hearing, but that, no such examinations were ordered by the Social Security Administration examiner reviewing his case. *Id.* Plaintiff maintains that the record supports his memory impairments because psychologist

Deborah Doineau, Ed.D, conducted an evaluation of him on June 21, 2007, and stated that his then-current "test scores suggested the presence of mental retardation with deficient reading and math skills," that his scores on the Wechsler Memory Scale - Third Edition "reflect rather significant memory impairment in a number of areas," and that he did not appear to be malingering. *Id.*, *quoting* TR 244. Plaintiff contends that he did not have insurance with which to procure the necessary examinations and that the ALJ therefore had the duty to order a neurological examination with memory testing in order to be able to fully and fairly develop the record. *Id.*

Defendant responds that the Regulations require an ALJ to order consultative examinations "on an individual basis" only "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim." Docket No. 20, p. 8, *quoting* 20 C.F.R. § 404.1519a. Defendant argues that there is ample evidence in the record upon which the ALJ made a reasoned determination that Plaintiff was not disabled, and also argues that the ALJ should not be required to order a consultative neurological examination, at taxpayer expense, simply because Plaintiff has asked for it. *Id.* at 9. With regard to Plaintiff's contention that Dr. Doineau's findings support his memory impairment, Defendant argues that Dr. Doineau "strongly questioned the results of Plaintiff's memory testing," and that Plaintiff's counsel acknowledged, at the hearing, that his memory testing had no validity. *Id.*, *quoting* TR 244 and *referencing* TR 45. Defendant argues that, accordingly, the ALJ properly decided this case without needing to order a consultative examination. *Id.*

The Sixth Circuit has held that the Commissioner is not required to order a consultative examination in order to assist a plaintiff in establishing disability. *See, e.g., Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990); *Landsaw v. Secretary*, 803 F.2d 211, 214 (6th Cir. 1986);

and *Kimbrough v. Secretary*, 801 F.2d 794, 797 (6th Cir. 1986). Moreover, the Regulations state that the agency will use a consultative examination "to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, [and] a diagnosis or prognosis." 20 C.F.R. § 404.1519a(a)(2). As will be discussed in greater detail in the statements of errors analyzed below, the record in the case at bar contains appropriate medical records specifically concerning Plaintiff's alleged impairments, that were properly considered by the ALJ, and upon which the ALJ based her decision. *See e.,g.,* TR 27-33. Because the record contains relevant medical records that were considered by the ALJ, the Regulations do not mandate that the ALJ order a consultative neurological examination.

Although Plaintiff correctly asserts that the ALJ must fully and fairly develop the record, Plaintiff fails to show that the ALJ did not do so. In fully and fairly developing the administrative record, the ALJ must discuss the evidence and identify the reasons and basis for crediting or rejecting certain items of evidence (*see, e.g., Morehead Marine Services v. Washnock*, 135 F.3d 366, 375 (6th Cir. 1998); *Hurst*, 753 F.2d at 519), as there can be no meaningful judicial review without an adequate explanation of the factual and legal basis for the ALJ's decision (*Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (1991)).

The Findings of Fact and Conclusions of Law section of the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. TR 27-32. The ALJ developed the evidence and adequately explained the reasons and basis for her conclusions, and as has been discussed above, the ALJ was not required to order a neurological evaluation of Plaintiff. Accordingly, Plaintiff's argument that the ALJ was required to order a neurological examination of Plaintiff in order to fully and fairly develop the record fails.

## 2. Weight Given to the Opinions of the Physicians of Record

Plaintiff contends that the ALJ gave improper weight to medical records from non-treating physicians regarding his epilepsy. Docket No. 15, p. 6-8. Specifically, Plaintiff argues that treating physician, Dr. Martin Gallagher, had diagnosed his epilepsy and prescribed medication for it, but that the ALJ discounted Dr. Gallagher's opinion in favor of the opinions of non-examining physicians, Drs. Misra and Pennington, because there was "no evidence of any seizure activity since late 2005 and his doctor no longer prescribed any medication after he was weaned off his medication in January, 2007." *Id., quoting* TR 8. Plaintiff contends that the ALJ's statement regarding Dr. Gallagher no longer prescribing any medication for Plaintiff after he was weaned off his medication in January, 2007 was erroneous, as, in fact, more medication for his seizures had been prescribed. *Id.* Plaintiff essentially maintains that the ALJ's misinterpretation of the evidence regarding Plaintiff's epilepsy medication (as evidenced by her misstatement) affected her determination of the weight to be accorded the opinion of Dr. Gallagher, such that her discounting of that opinion constitutes reversible error. *Id.*

Defendant responds that the ALJ acknowledged and properly addressed Plaintiff's epilepsy and found that Plaintiff's seizures occurred rarely and were non-severe Docket No. 20, p. 9-10. Defendant argues that Plaintiff's most recent seizure had been in 2005, and that, accordingly, his epilepsy has had little effect on his ability to perform basic work activities. *Id.*

With regard to the Plaintiff's claims regarding the weight accorded to Dr. Gallagher's opinion, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing

treatment relationship with you.

20 C.F.R. § 404.1502.

It is undisputed that Dr. Gallagher treated Plaintiff for his epilepsy, and that Drs. Misra and Pennington were non-examining physicians who reviewed the medical evidence of record and issued their assessment of Plaintiff's limitations. It is also undisputed that Plaintiff had not had a seizure since 2005. Contrary to Plaintiff's allegations that the ALJ discounted Dr. Gallagher's opinion for the opinions of Drs. Misra and Pennington, the ALJ based his determination that Plaintiff's epilepsy was non-severe on the undisputed fact that, as of his 2009 hearing, Plaintiff had not had a seizure since 2005. TR 27-28. Moreover, as noted by the ALJ, the records from Drs. Gallagher, Misra, and Pennington were consistent regarding Plaintiff's epilepsy: all reflected Plaintiff's history of, and treatment for, epilepsy; all reflected that Plaintiff had not had a seizure since 2005; all reflected no indication that Plaintiff's epilepsy caused even a minimal limitation to him; and all demonstrated that Plaintiff's epilepsy was non-severe. TR 27, *citing* TR 227-31, 232-35, 282-85.

Because the opinions of Drs. Gallagher, Misra, and Pennington were consistent with regard to Plaintiff's epilepsy, the ALJ did not discount Dr. Gallagher's opinion in favor of the opinions of Drs. Misra and Pennington, and Plaintiff's claim on this point fails.

With regard to Plaintiff's contention that the ALJ's misstatement regarding the status of Plaintiff's medication constitutes reversible error, such misstatement is harmless error, as the status of Plaintiff's medication does not alter the fact that, at the time of his 2009 hearing, he had not had a seizure since 2005. Plaintiff's lack of a seizure for more than three years evidences that his epilepsy is not disabling, as disability is defined in the Regulations. Plaintiff's claim on this point likewise fails.

12

**3. Consideration of Record Regarding Irritable Bowel Syndrome**

Plaintiff contends that the ALJ erred "by giving little weight to Dr. Misra and Dr. Pennington's opinions regarding the claimant's impairment of irritable bowel syndrome ["IBS"] because they did not examine the claimant and they did not consider the claimant's subjective complaint." Docket No. 15, p. 8, *citing* TR 32. Plaintiff further contends that the ALJ's according great weight to the opinions of Drs. Misra and Pennington regarding his epilepsy, but according little weight to their opinions regarding his IBS, "shows major inconsistency in the ALJ's considerations of medical records." *Id.*

Defendant does not respond directly to this argument, but argues that the ALJ properly considered the evidence of record (including the opinion evidence), properly developed the record, and reached a reasoned decision that was supported by substantial evidence. Docket No. 20.

With regard to the ALJ's evaluation of Plaintiff's IBS, the ALJ stated:

> The claimant is alleging disability due to digestive problems. Treatment notes revealed the claimant has a longstanding history of bowel problems . . . . A colonoscopy was normal. The claimant was diagnosed with irritable bowel syndrome (IBS) and was treated with medications and monitored on a regular basis. Treatment notes revealed the claimant continues to experience occasional episodes of diarrhea, but this is resolved once he takes his medication. The claimant testified that about once a week he had problems with needing an unscheduled bathroom break, and only sometimes did this occur in daytime hours.

TR 29.

When discussing Plaintiff's ability to work on a job for 23 continuous years, the ALJ also observed: "It is also noted that the claimant's irritable bowel syndrome also did not prevent him from working, though he might have occasionally needed to take an unscheduled bathroom

13

break." TR 32.

As can be seen by the ALJ's articulated rationale, the ALJ considered Plaintiff's allegations and subjective complaints, his treatment records, his prescription medication and its effectiveness, his testimony, and his ability to work on the same job for 23 years despite suffering from IBS. TR 29, 32. There is no support in the record for Plaintiff's allegation that the ALJ inconsistently or improperly evaluated the evidence. To the contrary, the ALJ's articulated rationale demonstrates that he properly considered the medical and testimonial evidence, and the Regulations do not require more. Plaintiff's argument fails.

### 4. Rejecting the Credibility of Plaintiff

Plaintiff contends that the ALJ erroneously "rejected" his credibility. Docket No. 15. Plaintiff notes that the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible....

Docket No. 15, p. 10-11, *citing* TR 32. Plaintiff argues that the ALJ was required to state a reason for rejecting Plaintiff's testimony and that the ALJ could not rely solely upon the absence of objective proof as to the severity of Plaintiff's pain in order to support an adverse credibility finding, where the medical evidence establishes an impairment which could reasonably be expected to cause disabling pain. *Id.* at 10. Plaintiff contends that the ALJ's credibility determination in the case at bar was conclusory and unsupported by the record. *Id.*

Defendant responds that the ALJ followed the prescribed two-step process of evaluating subjective symptoms when she first determined that Plaintiff's medically determinable impairments could, in fact, reasonably be expected to produce his claimed symptoms, but then

14

determined that Plaintiff's claims concerning the intensity, persistence, and limiting effects of his symptoms were not credible. Docket No. 20, p. 11-12. Defendant argues that, contrary to Plaintiff's assertion that the ALJ's finding was conclusory, "the ALJ's credibility analysis spanned close to four pages," and was supported by substantial evidence. *Id.*

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf. King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

In the case at bar, the ALJ explicitly discussed in detail the medical records relating to Plaintiff's epilepsy, IBS, and mental health problems; the evaluations of Drs. Misra, Pennington, Doineau, Welch, and Wright; Plaintiff's testimony regarding his abilities, daily activities, and subjective complaints; and Plaintiff's past work, and never-the-less, determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of his symptoms were not credible...." TR 32. The ALJ, through her articulation of the evidence, demonstrated that

Plaintiff's subjective complaints were inconsistent with, and unsupported by, the objective medical evidence. Accordingly, the ALJ discounted Plaintiff's credibility. This determination was within the ALJ's province.

The ALJ observed Plaintiff during his hearing, assessed the medical records, reached a reasoned decision, and articulated the bases for that decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Plaintiff's claim that the ALJ's determination was conclusory or based "solely upon the absence of objective proof" fails.

## 5. Previous Employment as Evidence of Being Employable

Plaintiff contends that the ALJ erred in finding that, because he had held a job for 23 years, he was still employable. Docket No. 15, p. 9-10. Plaintiff cites *Wilder v. Apfel*, 153 F.3d 799 (U.S. App. 1998), for the proposition that "employment is not necessarily proof of an ability to work." *Id.* at 9. Plaintiff maintains that, Mark Jent, the Safety Specialist for his previous employer, had indicated on an April 17, 2007 Employer Questionnaire that Plaintiff had had difficulty dealing with changes in daily duties, understanding and carrying out detailed instructions, maintaining attention for tasks for extended periods, working in coordination with or proximity to others without being distracted by them, keeping up with work, completing tasks, and remaining at work during stressful times. *Id.* at 9-10. Plaintiff argues that the ALJ failed to include these restrictions in the hypothetical questions posed to the VE, and that had the ALJ included these restrictions in her hypotheticals, the VE would have testified that there were not significant numbers of available jobs in the regional or national economy that would be appropriate for Plaintiff. *Id.* Accordingly, Plaintiff contends that he can not return to his past relevant work. *Id.*

Defendant responds that Mr. Jent's report containing Plaintiff's limitations is actually consistent with the ALJ's RFC finding that Plaintiff retained the RFC to perform a full range of work at all exertional levels, with the non-exertional limitation of performing simple 1-2 step repetitive tasks that do not require good reading, writing, or math skills, and with the permission to take an unscheduled bathroom break up to once per week. Docket No. 20, p. 10-11, *citing* TR 29. Defendant notes that Mr. Jent indicated in the referenced Questionnaire that Plaintiff always reported to work on time, that his attendance was satisfactory, that he was able to maintain an ordinary work routine without supervision, that he was able to understand and carry out simple 1-2 step instructions, that he could ask simple questions and request assistance, that he could perform assigned tasks at a consistent pace, and that he could make simple work-related decisions. *Id., citing* TR 156. Defendant also notes that Plaintiff's counsel conceded at the hearing that Plaintiff had been terminated from his employment, but that he would have continued to work with this employer had he not been terminated. *Id.*, p. 11, *citing* TR 45. Defendant contends that because Mr. Jent's report containing Plaintiff's limitations is consistent with the ALJ's RFC finding, the hypotheticals posed to the VE were proper. *Id.*

With regard to Plaintiff's past work, the ALJ recounted Plaintiff's report to Dr. Doineau that he had been "let go" from his job of 23 years because of a "disagreement with his supervisor." TR 30. Dr. Doineau explained:

> The claimant stated that he cut his thumb on the job and was required to take a drug test, which he passed. However, the claimant informed his supervisor that he had smoked marijuana 2 days before. The claimant said that once he admitted to drug use, he was terminated even though he passed the drug screen.

*Id.* The ALJ also recounted Plaintiff's testimony that he had been terminated from his position as a cardboard coordinator at an automotive plant for "smoking a joint." TR 31.

The ALJ noted that Plaintiff had continued to work for years after his accident, observing:

> It must be noted that [Plaintiff's] termination occurred because he acknowledged using marijuana a couple of days before his negative drug screen, and not because of poor job performance or that his drug or alcohol use affected his work performance.

TR 32.

Contrary to Plaintiff's claims that the ALJ found that Plaintiff could work simply because he had worked for 23 years, as has been discussed above, the ALJ explicitly discussed the medical records relating to Plaintiff's epilepsy, IBS, and mental health problems; the evaluations of Drs. Misra, Pennington, Doineau, Welch, and Wright; Plaintiff's testimony regarding his abilities, daily activities, and subjective complaints; and Plaintiff's past work. TR 27-32. Accordingly, the ALJ properly took into consideration the entirety of the record.

Moreover, as demonstrated, the ALJ's decision is supported by substantial evidence. As explained above, "substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion," *Her*, 203 F.3d at 389 (*citing Richardson*, 402 U.S. at 401), and has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell,* 105 F.3d at 245 (*citing Consolidated Edison Co.,* 305 U.S. at 229).

The record here is replete with doctors' evaluations, medical assessments, test results, and the like, all of which were properly considered by the ALJ, and all of which constitute "substantial evidence." Additionally, the ALJ's decision demonstrates that she carefully considered the testimonial evidence as well. While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence

18

supports the ALJ's determination that Plaintiff is not disabled under the guidelines of the Social Security Act. TR 33.

As has been noted, the reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key*, 109 F.3d at 273). The ALJ's decision was properly supported by "substantial evidence;" the ALJ's decision, therefore, must stand.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record or, in the Alternative, for Remand be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge